UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANDREW BETHUNE,

Plaintiff,

-against-

WESTCHESTER COUNTY *et al.*,

Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/2/2020

No. 18-cv-3500 (NSR)

ORDER & OPINION

NELSON S. ROMÁN, United States District Judge:

Plaintiff Andrew Bethune ("Plaintiff"), proceeding *pro se*, commenced this action, pursuant to 42 U.S.C. § 1983, against Defendants Westchester County ("Westchester"), Westchester County Department of Corrections Commissioner Kevin M. Cheverko ("Cheverko"), Aramark Correctional Services, LLC ("Aramark"), Aramark Food Service Director Manual Mendoza ("Mendoza"), and Aramark Kitchen Civilians Charles, Coley, Penny, and Craig (collectively, "Defendants").[1] (Compl., ECF No. 2.) Plaintiff asserts claims related to the food he received while detained at Westchester County Jail ("WCJ"), specifically alleging violations of (1) the Religious Land Use and Institutionalized Person Act of 2000, 42 U.S.C. § 2000cc, *et seq.* ("RLUIPA"), (2) the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, *et seq.* ("RFRA"), and (3) the First, Eighth, and Fourteenth Amendments to the United States Constitution. (*Id.* ¶ 1.)

Presently before the Court is Defendants' motion to dismiss the complaint. (ECF No. 34.) For the following reasons, the motion is GRANTED.

---

[1] Plaintiff initially commenced this action together with five inmates, who all proceeded *pro se*. *See Gomez v. Westchester Cty.*, No. 7:18-cv-244-NSR (S.D.N.Y. Jan. 10, 2018) (ECF No. 6). By Order dated April 17, 2018, the Honorable Colleen McMahon severed the plaintiffs' claims (*see Gomez*, ECF No. 18), and Plaintiff's case was assigned docket number 18-cv-3500. Although Plaintiff's complaint continues to set forth allegations related to the severed plaintiffs, the Court will only address those facts in the complaint that are applicable to Plaintiff.

## BACKGROUND

The following facts are taken from Plaintiff's Complaint and are accepted as true for purposes of this motion.

Plaintiff, currently incarcerated at Fishkill Correctional Facility, is a Muslim inmate who was previously a pretrial detainee at WCJ. (Compl. ¶¶ 4, 61-62.) Plaintiff alleges that, while at WCJ, he was offered meals that were inconsistent with his religious beliefs. (*Id.* ¶ 62.) Although Plaintiff had filed nine "Request for a Religious diet [sic]" forms, he did not receive a response to them prior to filing this complaint. (*Id.*) Staff at WCJ also served Plaintiff bologna "on numerous occasions," which is "haram," *i.e.*, prohibited, to a follower of Islam. (*Id.* ¶ 64.)

Plaintiff also experienced more general issues with the food he received as a detainee. Specifically, Plaintiff was served undercooked food (*i.e.*, "[p]ink internally"), rotted salads, stale breads, and food containing hair. (*Id.* ¶ 63.) Moreover, Plaintiff contends he was served over twenty meals containing "another inmate['s ](kitchen workers) hair" and insects. (*Id.* ¶ 65.) Because of the issues with WCJ's food service, Plaintiff states he was "damaged" and "forced to seek medical treatment for his ailments."[2] (*Id.* ¶ 68.) Plaintiff eventually filed a grievance about these issues and appealed his grievance to the highest authority. (*Id.* ¶ 67.)

## LEGAL STANDARD

### I.  Rule 12(b)(6)

On a 12(b)(6) motion, dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When

---

[2]  Although it is not necessarily clear from the face of complaint, given that multiple plaintiffs were originally implicated, a liberal construction indicates that Plaintiff's injuries seem to have included "Significant weight loss," "Unwanted stretch marks," "Extreme stomach pains and cramps," "Vomiting/nausea," "Daily hunger pangs," and "Constant head aches [sic] . . . and . . . fatigue." (*Id.* at 22.)

there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When a *pro se* plaintiff is concerned, courts must construe the pleadings in a particularly liberal fashion. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). In fact, courts must interpret the *pro se* plaintiff's pleadings "to raise the strongest arguments that they suggest." *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010) (internal quotations and citation omitted). Nevertheless, a *pro se* plaintiff's pleadings must contain factual allegations that sufficiently "raise a right to relief above the speculative level," *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010), and the court's duty to construe the complaint liberally is not "the equivalent of a duty to re-write it," *Geldzahler v. N.Y. Med. College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

## II. Section 1983

Under Section 1983, "[e]very person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself the source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Paterson v. Cty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under Section 1983, a plaintiff must allege (1) the challenged conduct was attributable to a person who was acting under color of state law and (2) "the conduct

deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York.*, No. 09 Civ. 5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); *see also Cornejo v. bell*, 592 F.3d 121, 127 (2d Cir. 2010).

## DISCUSSION

Liberally construed, Plaintiff's complaint asserts seven claims against Defendants. *First*, Plaintiff brings an *Monell* claim based on (1) Westchester and Aramark's alleged failure to properly train and supervise their subordinates and (2) a longstanding pattern of providing substandard food at WCJ. (Compl. ¶¶ 82-83, 98.) *Second*, Plaintiff brings a First Amendment claim, alleging that Defendants "collectively placed an unnecessary burden" on Plaintiff's religious observance. (*Id.* ¶¶ 85-86.) *Third*, Plaintiff brings claims under RLUIPA and RFRA based on Defendants' alleged interference with Plaintiff's religious beliefs. (*Id.* ¶¶ 88-93.) *Fourth*, Plaintiff states a claim of deliberate indifference to his conditions of confinement against all Defendants under the Fourteenth Amendment.[3] (*Id.* ¶¶ 94-95.) *Fifth*, Plaintiff sets forth a claim for supervisory liability against Defendant Cheverko, which is premised on his alleged failure to intervene. (*Id.* ¶¶ 97-99.) *Finally*, Plaintiff alleges deprivation of rights under the Equal Protection Clause. (*Id.* ¶¶ 100-03.)

The Court addresses these claims below.

## I.    Municipal Liability of Westchester and Aramark

Plaintiff's complaint appears to bring claims under two theories of municipal liability: failure to train and the existence an unofficial policy. In response, Defendants contend that Plaintiff failed to allege conduct that amounted to a custom or policy under *Monell v. Dep't of*

---

[3]     Although Plaintiff states that this claim is brought under the Eighth Amendment, a "pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

*Social Servs. of City of New York*, 436 U.S. 658 (1978). (Defs. Mem. of Law in Support of Mot. to Dismiss ("Defs. Mot."), ECF No. 35, at 16-17.) The Court agrees.

A municipality, or private actor engaged in governmental action,[4] may not be held liable under Section 1983 on a *respondeat superior* theory solely because the municipality employs a tortfeasor. *Monell*, 436 U.S. at 691. Therefore, under *Monell*, a plaintiff must demonstrate "that the municipality itself caused or is implicated in the constitutional violation." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004). This generally requires a plaintiff to establish that "(1) an official custom or policy [] (2) subjected [him or her] to (3) a denial of a constitutional right." *Ferrari v. Cty. of Suffolk*, 790 F. Supp. 2d 34, 40 (E.D.N.Y. 2011); *see also Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) ("In order to prevail on a claim against a municipality under [S]ection 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury."). To establish an official custom or policy, a plaintiff must allege

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

---

[4] Courts that have considered the issue have found that Aramark, in its capacity as a food provider at Westchester County Jail, can be viewed a state actor for purposes of assessing *Monell* liability. *See, e.g.*, *Pagan v. Westchester Cty.*, No. 12 Civ. 7669(PAE)(JCF), 2014 WL 982876, at *23-24 (S.D.N.Y. Mar. 12, 2014). Indeed, this Court has previously explained that (1) "Aramark's 'seemingly private' behavior can be treated as that of the state given that the challenged action, proper food service, flows directly from the obligations of the government entity and is performed under its supervision," and (2) "Aramark, by providing meals to inmates, performs a 'public function' and therefore is a state actor." *Salgado v. DuBois*, No. 17-cv-6040 (NSR), 2019 WL 1409808, at *9 (S.D.N.Y. Mar. 28, 2019). Regardless, the Court need not flesh this issue out here because Aramark has permitted the Court to treat it as a state actor for purpose of this motion only. (Defs. Mot. 15.)

*White v. Westchester Cty.*, No. 18-CV-730 (KMK), 2018 WL 6726555, at \*10 (S.D.N.Y. Dec. 21, 2018) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)).

If a plaintiff premises *Monell* liability on an unofficial policy or custom, the practice, custom, or usage must be so widespread and so persistent that it has the force of law. *Goode v. Westchester Cty.*, NO. 18-cv-2963 (NSR), 2019 WL 2250278, at \*3 (S.D.N.Y. May 24, 2019). Alternatively, where municipal liability is based on a failure to train employees, the inadequate training must "reflect[] deliberate indifference to . . . constitutional rights." *City of Canton v. Harris*, 489 U.S. 378, 392 (1989). To prove deliberate indifference, a plaintiff must properly plead (1) "that a policymaker knows 'to a moral certainty' that her employees will confront a given situation"; (2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "that the wrong choice by the . . . employee will frequently cause the deprivation of a citizen's constitutional rights." *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009) (citing *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992)).

Plaintiff first tries to establish that Westchester (and, it appears, Aramark) "failed to properly train[] and supervise its subordinates and/or contractors to ensure that foods were being served in full satisfaction of established federal and state laws." (Compl. ¶ 82.) This statement is nothing more than a conclusory allegation, which is plainly "insufficient to state a *Monell* claim." *See Davis v. City of New York*, No. 07 Civ. 1395(RPP), 2008 WL 2511734, at \*6 (S.D.N.Y. June 19, 2008). Plaintiff next tries to plead a consistent and widespread practice by alleging that Westchester and Aramark "allowed for a longstanding pattern of substandard food" at WCJ and "failed to ensure that religious meals met religious requirements and were adequate in nutrition."

(Compl. ¶ 83.)  The law is clear, however, that it is not enough to simply allege that a municipal

policy or custom exists.  *See Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995).

Given these pleading deficiencies, the complaint directs the Court to two prior lawsuits—

both of which were settled without any admission of liability.[5]  (Compl. at 6 (citing *Pagan v.

Westchester Cty.*, No. 1:12-cv-7669-PAE-SN (S.D.N.Y. Oct. 12, 2012) (ECF No. 15); *Perez v.

Westchester Cty.*, No. 1:05-cv-8120-RMB-DCF (S.D.N.Y. Sept. 20, 2005) (ECF No. 2)).[6]  Plaintiff

seemingly points to these lawsuits to establish an inference of a either a failure to train or the

existence of an unofficial policy.  The Court concludes, however, that these lawsuits fail to remedy

Plaintiff's deficient *Monell* claim.

*First*, mere citations to lawsuits, even if they did involve comparable conduct, do not alone

establish a custom or practice that is widespread and persistent, particularly if the lawsuits did not

result in an adjudication of liability.  *See An v. City of New York*, 230 F. Supp. 3d 224, 229-30

(S.D.N.Y. 2017) ("Plaintiff cites six lawsuits filed between 2012 and 2016 and one newspaper

report.  But the Complaint fails to allege that any of the six lawsuits, which were filed over a course

of four years, resulted in a finding that the NYPD officers violated the plaintiffs' First Amendment

rights."); *Tieman v. City of Newburgh*, No. 13-CV-4178 (KMK), 2015 WL 1379652, at *17

---

[5]     The Court notes that Plaintiff's complaint attaches over 800 pages of exhibits.  (*See generally* ECF Nos. 2, 2-1, 2-2, and 2-3.)  Although Defendants assert that these are "documents outside the pleadings" that are neither incorporated by reference nor integral to the complaint (Defs. Mot. 13), the documents are, in fact, "documents attached to the complaint" that the Court may properly consider on a Rule 12(b)(6) motion.  *See Brass v. Am. Film Techs.*, 987 F.2d 142, 150 (2d Cir. 1993).  These materials almost entirely consist of unabridged deposition transcripts from the *Pagan* lawsuit referenced above, although there appears to be a complaint attached from *Ross v. Aramark Corp.*, No. 17-CV-7105-CM (S.D.N.Y. Sept. 18, 2017), which was dismissed on February 20, 2018 (*see* ECF No. 2-1 at 112).  As an initial matter, the Court is unable to discern how any of the *Pagan* deposition transcripts support Plaintiff's present allegations.  Assuming Plaintiff does wish to rely on certain portions of these documents, he should identify the relevant excerpts *necessary* to his claim, attach those specific pages (as well as any necessary identifying information, such as a transcript cover page) as exhibits, and incorporate them into his complaint. The Court should not have to parse through mountains of irrelevant pages to discern how, if at all, a series of unabridged transcripts support Plaintiff's claims.  Moreover, the Court notes that the allegations in the attached *Ross* complaint do not appear at all similar to Plaintiff's own allegations.

[6]     As Defendants note, this Court "may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'"  *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) (quoting *Liberty Mutual Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992)).

(S.D.N.Y. Mar. 26, 2015) (explaining that lawsuits cited by plaintiff in a proposed amended complaint were insufficient to support an inference of a widespread custom).

*Second*, although citations to lawsuits could, in some cases, "'permit a plausible inference' of deliberate indifference," *Osterhoudt v. City of New York*, No. 10 CV 3173(RJD)(RML), 2012 WL 4481927, at *2 (E.D.N.Y. Sept. 27, 2012) (citing *Ferrari v. Cty. of Suffolk*, 790 F. Supp. 2d 34, 46 (E.D.N.Y. 2011)), Plaintiff here does not plead any facts establishing that any alleged abuses in those prior lawsuits "were caused by a failure to train officers in the proper handling" of the food issues alleged in the present complaint. *See, e.g.*, *Vincent v. Winski*, No. 14-CV-7744 (VSB), 2018 WL 1441370, at *17 (S.D.N.Y. Mar. 22, 2018) (granting defendants' motion to dismiss *Monell* claims where "the only facts that Plaintiff identifie[d] in support of any pattern of mishandling situations because of a failure to train . . . consist[ed] of other litigations resulting in settlements"). Nor does Plaintiff allege Defendants' responses to those lawsuits. *See Falls v. Campbell*, No. 17-CV-35 (KMK), 2019 WL 1255768, at *7 (S.D.N.Y. Mar. 19, 2019) ("A litany of prior lawsuits may suffice to put the [County] on notice that greater training, supervision, or officer discipline was needed, but [P]laintiff makes only conclusory allegations regarding the [County]'s response to the lawsuits." (quoting *Falls v. Orange Cty.*, No. 17-CV-1339 (VB), 2018 WL 718417, at *4 (S.D.N.Y. Feb. 5, 2018)). In any event, the existence of two lawsuits filed over the course of five years—and six years prior the initiation of the present lawsuit—does not strike this Court as enough to plausibly allege an obvious need to act on the part of Westchester or Aramark. *See An*, 230 F. Supp. 3d at 231 ("[T]he six lawsuits and one newspaper article over the span of four years is insufficient to plausibly allege the need [to act that] was obvious.").

In sum, Plaintiff has failed to adequately allege a custom or policy under *Monell*. The Court GRANTS Defendants' motion to dismiss Plaintiff's claims against Defendants Westchester

and Aramark, as well as any claims against the individual Defendants sued in their official capacities, without prejudice and with leave to replead.

## II.  **Individual Liability**

Plaintiffs name six individual defendants in their complaint, all of whom appear to occupy varying degrees of supervisory roles at WCJ. (Compl. ¶¶ 10-15.) In seeking dismissal, Defendants argue that Plaintiff has failed to make any factual allegation implicating the individually named Defendants. (Def. Mot. 14.) The Court agrees.

In general, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977). "[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he [or she] held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *see also Grullon v. City of New Haven*, 720 F.3d 133, 138-39 (2d Cir. 2013). Personal involvement of a defendant may be shown by evidence of any of the following factors (the "*Colon* factors"):

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Grullon*, 720 F.3d at 139 (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).[7] Notably, "mere 'knowledge and acquiescence'" to unconstitutional conduct, or mere failure to act on a

---

[7]    Although there is a split in authority, "[t]he majority of the district courts [in this circuit] . . . have held that, absent any contrary directive from the Second Circuit, all five *Colon* factors survive where the constitutional violation at issue does not require a showing of discriminatory intent." *Allah v. Annucci*, No. 16-CV-1841 (KMK), 2017 WL 3972517, at *6 (S.D.N.Y. Sept. 7, 2017) (quoting *El-Hanafi v. United States*, No, 13-CV-2072, 2015 WL 72804, at *13 (S.D.N.Y. Jan. 6, 2015)) (collecting cases). This Court has already expressed its agreement with this proposition and, given that it will ultimately dismiss Plaintiff's equal protection claim, the Court will apply it with equal force here. *See Booker v. Griffin*, No. 16-CV-00072 (NSR), 2018 WL

complaint, without more, fails to state a claim under Section 1983.  *See Faulk v. N.Y.C. Dep't of Cor.*, No. 08-CV-1668(LGS), 2014 WL 239708, at *10 (S.D.N.Y. Jan. 21, 2014); *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010) ("[T]he receipt of letters or grievances, by itself, does not amount to personal involvement.").  Furthermore, dismissal is typically warranted where a plaintiff "fails to make any factual allegations" against individually named defendants, and instead "only generally alleges" violations by staff or employees.  *See Hoffstead v. Aramark Corr. Servs., LLC*, No. 18 CV 2381 (VB), 2019 WL 1331634, at *3 (S.D.N.Y. Mar. 25, 2019) (dismissing claims against individual defendants where "Plaintiff fail[ed] to make any factual allegations against [the named defendants]" and "only generally allege[d] throughout his complaint that 'Aramark's staff' and 'kitchen staff' served him food to which he was allergic").

Here, Plaintiff has failed to establish the individual Defendants' personal involvement in the alleged constitutional violations.  Regarding Defendants Mendoza, Charles, Coley, Penny, and Craig, Plaintiff never mentions those Defendants at any point in the factual allegations of his complaint.  Without any facts about what role, if any, these defendants had the alleged constitutional violations, Plaintiff's claims against them plainly fail.

Turning to Cheverko, Plaintiff alleges that he "deliberately violated [Plaintiff's] constitutional rights" by "turn[ing] [a] blind eye to the misconduct" alleged in the complaint. (Compl. ¶ 98.)  This statement is conclusory, and therefore cannot support an allegation of supervisory liability against Cheverko.  Without that allegation, the complaint becomes wholly devoid of any indication that Cheverko (1) was directly involved in any particular violation; (2) was informed of any constitutional violations and failed to act; or (3) created any custom or policy that facilitated the unconstitutional practice or allowed any such policy to continue.  Nor

---

1614346, at *11 (S.D.N.Y. Mar. 31, 2018); *Marshall v. Annucci*, No. 16-CV-8622 (NSR), 2018 WL 1449522, at *9 (S.D.N.Y. Mar. 22, 2018).

has Plaintiff alleged facts that give rise to an inference that Cheverko was grossly negligent or deliberately indifferent to any alleged issues at WCJ. Rather, it appears that Cheverko has been sued merely because of the "bare fact" that he "occupies a high position" at WCJ, which is insufficient to sustain a Section 1983 claim. *Colon*, 58 F.3d at 874.

In conclusion, Plaintiff has failed to establish the personal involvement of any of the individual Defendants named in the complaint. Accordingly, the Court GRANTS Defendants' motion to dismiss any claims alleged against Defendants Mendoza, Charles, Coley, Penny, Craig, and Cheverko, without prejudice and with leave to replead.[8]

### III.    Sufficiency of Plaintiff's Claims

Even if Plaintiff established the personal involvement of the individual Defendants, or that Westchester County and Aramark could be held liable under *Monell*, Plaintiff still fails to state claims upon which relief can be granted.[9] The Court provides more color below.

### A.  Free Exercise Claim

Plaintiff alleges that Defendants "collectively placed an unnecessary burden upon Plaintiff['s] religion[] and deprived [him] of [his] right to freedom of religion." (Compl. ¶ 86.) Defendants, conversely, maintain that Plaintiff has failed to allege facts that plausibly establish that his sincerely held beliefs were substantially burdened. (Defs. Mot. 23.) The Court agrees.[10]

---

[8]     The above-discussed deficiencies also prove fatal to any "failure to intervene" claim against these defendants, which appears to be premised on Defendants' alleged awareness of lawsuits and current grievances (*see* Compl. ¶ 98) regarding the issues at WCJ. Indeed, the Court reiterates that the receipt of grievances is not enough to establish even personal involvement, let alone deliberate indifference, *see Mateo*, 682 F. Supp. 2d at 430, and further notes that the mere existence of prior lawsuits, without more, does not establish deliberate indifference, *see Constant v. Prack*, No. 16-cv-3985 (NSR), 2019 WL 3287818, at *9 (S.D.N.Y. July 19, 2019) (explaining that "a mere reference to three dismissed lawsuits over the course of twelve years" did not establish awareness "of a longstanding history of prior inmate-on-inmate attacks like the one experienced by Plaintiff"). The Court addresses additional deficiencies in Plaintiff's deliberate indifference claims below.

[9]     Because Plaintiff is no longer detained at WCJ, he is not entitled to declaratory or injunctive relief related to any past misconduct of state officials. *See Li v. Lorenzo*, 712 F. App'x 21, 23 (2d Cir. 2017) (explaining that neither injunctive nor declaratory relief are available for injuries "stemming only from past conduct" that is not still ongoing). Any claims for declaratory or injunctive relief are therefore DISMISSED with prejudice.

[10]    For purposes of this motion, the Court assumes that Plaintiff had a sincerely held religious belief.

"The Free Exercise Clause of the First Amendment is an 'unflinching pledge to allow our citizenry to explore . . . religious beliefs in accordance with the dictates of their conscience.'" *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999) (quoting *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984)). The protection extends to prisoners, who have "'long been understood to retain some measure of' their rights under the Free Exercise Clause." *Brandon v. Kinter*, 938 F.3d 21, 32 (2d Cir. 2019) (quoting *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003)). One such protection is a prisoner's "right to a diet consistent with [the inmate's] religious scruples." *Barry v. LaManna*, No. 19 CV 4189 (VB), 2019 WL 6790515, at *3 (S.D.N.Y. Dec. 12, 2019) (quoting *Ford*, 352 F.3d at 59).

Nevertheless, "although prisoners do not abandon their constitutional rights at the prison door, lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations of our underlying our penal system." *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (internal quotations and citations omitted). As such, a prisoner's First Amendment rights "must be balanced against the 'interest of prison officials charged with complex duties arising from administration of the penal system.'" *Kinter*, 938 F.3d at 32 (quoting *Ford*, 352 F.3d at 588).

To establish a Free Exercise claim, an inmate must typically plead that he or she had a sincerely held religious belief substantially burdened by conduct that was not reasonably related to a legitimate penological interest.[11] *Corbett v. Annucci*, No. 16-cv-4492 (NSR), 2018 WL 919832, at *3 (S.D.N.Y. Feb. 13, 2018) (citing *Turner v. Sidorowicz*, No. 12-CV-7048 (NSR), 2016 WL 3938344, at *5 (S.D.N.Y. July 18, 2016); *Holland v. Goord*, 758 F.3d 215, 220-23 (2d

---

[11]     The Second Circuit "has not yet decided whether the substantial burden requirement remains good law after the Supreme Court's decision" in *Employment Division v. Smith*, 494 U.S. 872, 887 (1990). *Kinter*, 938 F.3d at 32 n.7. Rather, it typically has assumed the issue, without deciding it, "by noting either that the parties did not brief the issue or that the requirement, even if applied, would have been satisfied." *Id.* (citing *Williams v. Does*, 639 F. App'x 55, 56 (2d Cir. 2016); *Holland*, 758 F.3d at 220; *Ford*, 352 F.3d at 588). The Court need not resolve the viability of the substantial burden requirement at this time.

Cir. 2014)).  The Second Circuit "define[s] a substantial burden as a situation where 'the state puts substantial pressure on an adherent to modify his behavior."  *Hamilton v. Countant*, No. 13-CV-669(RA), 2016 WL 881126, at *4 (S.D.N.Y. Mar. 1, 2016) (quoting *McEachin v. McGuinnis*, 357 F.3d 197, 203 (2d Cir. 2004)).  This is "not a particularly onerous task."  *McEachin*, 357 F.3d at 202-03.  And "courts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights."  *Id.* at 203.  However, as the Second Circuit has recognized, "[t]here may be inconveniences so trivial that they are most properly ignored.  In this respect, this area of the law is no different from many others in which the time-honored maxim '*de minimis non curat lex*' applies."  *Id.* at 203 n.6.

Here, Plaintiff offers two allegations to support his free exercise claim: (1) Plaintiff was not offered meals consistent with his religious beliefs, although he filed nine requests to receive a religious diet that had remained pending; and (2) on "numerous occasions" Plaintiff received bologna with his meal.  (Compl. ¶¶ 62, 64.)  Drawing all reasonable inferences in Plaintiff's favor, the Court concludes that it is possible that, with more, Plaintiff could sufficiently allege a free exercise claim that would withstand a motion to dismiss.  But his complaint as currently drafted fails to do so.

As an initial matter, even though he contends he was not offered meals consistent with his religious belief, Plaintiff does not specify "how often he was denied access to [Halal] meals, if at all."  *Leach v. New York City*, No. 12 Civ. 3809(PAC)(JCF), 2013 WL 3984996, at *2 (S.D.N.Y. Aug. 2, 2013).  Such information is critical to determining whether the burden on Plaintiff's exercise of his religion is greater than *de minimis*.  *See Ford*, 352 F.3d at 594 n.12 (explaining that "mere inability to provide a small number of meals commensurate with a prisoner's religious dietary restrictions was found to be a de minimis burden").

Moreover, to the extent Plaintiff alleges he was provided bologna that was "haram," Plaintiff does not specify critical details that would allow this Court to assess the degree of burden on the exercise of his religion. Such details include, for example, whether he raised the issue to staff at WCJ, whether his complaints were ignored, or whether any alternative arrangements were made that would have allowed Plaintiff to avoid having to consume a haram food product. *See Rutherford v. Westchester Cty.*, No. 18-CV-4872 (KMK), 2020 WL 433841, at *7 n.9 (S.D.N.Y. Jan. 28, 2020) (explaining that plaintiff's claim that whenever he "complain[ed] to officers that [his] meals [were] not consumable," he received a bologna and cheese sandwich, did not state a claim because plaintiff did not "indicate whether such events are frequent, isolated, intentional or incidental" and did not "indicate whether officers eventually provided religiously acceptable meal options"); *cf. Pagan*, 2014 WL 982876 at *20 (concluding that plaintiffs stated plausible claim where they had "complained about undercooked meals served on moldy trays" and were "offered an alternative meal of a bologna and cheese sandwich," which they were not permitted to eat).

Accordingly, Plaintiff has failed to state claim related to a violation of his First Amendment rights. The Court GRANTS Defendants' motion to dismiss Plaintiff's free exercise claim, without prejudice and with leave to amend.

## B. Deliberate Indifference/Failure to Intervene Claims

Liberally construed, Plaintiff's complaint brings a condition-of-confinement claim against Defendants based on the condition of the food served while he was detained at WCJ. (*See* Compl. ¶¶ 94-99.) Specifically, Plaintiff alleges that Defendants were deliberately indifferent to, and/or failed to intervene to prevent, the purportedly deplorable food conditions. (*Id.*) Defendants, however, contend that Plaintiff has failed to sufficiently allege that the issues he experienced were sufficiently serious or that Defendants acted with the requisite mindset when imposing, or failing to correct, any alleged condition. (Defs. Mot. 19-22.) Although Plaintiff has pleaded a sufficiently

serious condition, the Court nevertheless agrees that Plaintiff has failed to establish the requisite *mens rea* element of his deliberate indifference claim.

To set forth a conditions-of-confinement claim under the Fourteenth Amendment, a plaintiff must show that an individual "acted with deliberate indifference to the challenged conditions." *See Sanders v. City of New York,* No. 16 Civ. 7426 (PGG), 2018 WL 3117508, at *6 (S.D.N.Y. June 25, 2018). The deliberate indifference test for a pretrial detainee contains an objective prong and a subject prong. *Darnell*, 849 F.3d at 29.

The objective prong requires that the "deprivation at issue be, 'in objective terms, sufficiently serious.'" *Simmons v. Mason*, No. 17-CV-8886 (KMK), 2019 WL 4525613, at *9 (S.D.N.Y. Sept. 18, 2019). A plaintiff "must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Darnell*, 849 F.3d at 30. "There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must be evaluated in light of contemporary standards of decency.'" *Id.* at 29 (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995)). As relevant here, the Constitution "require[s] that prisoners be served 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.'" *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (quoting *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir. 1980), *cert. denied*, 450 U.S. 1041 (1981)). Courts have held that "allegations that a prisoner was served food contaminated or tainted by foreign objects" may satisfy the objective prong of the deliberate indifference test. *See Crispin v. Westchester Cty.*, No. 18 CV 7561 (VB), 2019 WL 2419661, at *3 (S.D.N.Y. June 10, 2019) (quoting *Ballard v. Lane*, No. 18-cv-1721 (AJN), 2019 WL 1129158, at *2 (S.D.N.Y. Mar. 12, 2019)).

Under the subjective prong, a plaintiff must plausibly allege that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care

to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Strange v. Westchester Cty. Dep't of Corr.*, No. 17-CV-9968 (NSR), 2018 WL 3910829, at *2 (S.D.N.Y. Aug. 14, 2018) (internal quotations omitted). This standard is "defined objectively" and "can be violated when an official does not have subjective awareness that the official's acts . . . have subjected the detainee to a substantial risk of harm." *Darnell*, 849 F.3d at 30.

Here, Plaintiff alleges that he received undercooked meals, rotted salads, and stale bread. (Compl. ¶ 63.) He also alleges that, over the course of over 20 meals, he found hair and insects in his meals. (*Id.* ¶ 65.) Finally, Plaintiff states that he was forced to seek medical treatment for his ailments, which the complaint states included, *inter alia*, weight loss, stomach pains and cramps, vomiting and nausea, daily hunger pangs, and constant headaches and fatigue. (*Id.* at 22.) Drawing all reasonable inferences in Plaintiff's favor, the Court concludes that Plaintiff has sufficiently alleged that he was exposed to conditions that "plausibly posed an unreasonable risk of serious damage to [P]laintiff's health." *See, e.g.*, *Adeghe v. Westchester Cty.*, No. 18 CV 7912 (VB), 2019 WL 4142470, at *3 (S.D.N.Y. Aug. 30, 2019) (determining that plaintiff satisfied objective prong of deliberate indifference test by alleging that "he was served food contaminated with plastic tray chippings, hair, flies, and mold; that his food was undercooked; and that he has been consistently ill as a result of the food, including suffering diarrhea, vomiting, fatigue, and more"); *Crispin*, 2019 WL 2419661 at *3 (concluding that plaintiff satisfied objective prong of deliberate indifference test by alleging (1) "that on at least twenty occasions, his meal tray contained raw and bloody meat—food that is nutritionally inadequate, to say the least," (2) that "he was served food contaminated with mold and tainted with plastic chips," both resulting in various ailments).

Plaintiff, however, has failed to meet the subjective prong of the deliberate indifference test. Plaintiff does make one conclusory assertion that Defendants were "fully aware of the

constitutional violations occurring at WCJ[] but failed to intervene." (Compl. ¶ 95.) Plaintiff, however, does not suggest anything about, for example, whether any of the Defendants were specifically aware of the allegedly inadequate food at WCJ, whether any of the Defendants provided Plaintiff the inadequate food, or whether Defendants knew of specific instances where plaintiff was allegedly served the problematic food about which he complains. *See Adeghe*, 2019 WL 4142470 at *4 (explaining that plaintiff's "allegations do not, however, suggest any defendant acted with deliberate indifference in serving plaintiff the allegedly inadequate food" and did not suggested that "any defendant prepared or served plaintiff the food that made him sick, was present on the occasions when plaintiff was served that food, or knew of any instance on which plaintiff was allegedly served inadequate food either before or after the fact"); *cf. Salgado*, 2019 WL 1409808 at *11 (explaining that plaintiff had plausibly alleged a sufficiently culpable state of mind because defendant "as the food service provider who was 'responsible for the food [the inmates] eat at [the] facility' and who sells the facility the food . . . would have been aware that the food was insufficient in quantity and tainted in quality and that these defects would pose an excessive risk to the health of the inmates").

Because Plaintiff has failed to sufficiently plead a claim for deliberate indifference, the Court GRANTS Defendants' motion to dismiss those claims.

### C. Equal Protection Claim

Although Plaintiff lists discrimination and equal protection as two separate counts, the Court construes the complaint as asserting a single equal protection claim premised on purported religious discrimination. (Compl. ¶¶ 100-04.) In response, Defendants counter that Plaintiff has failed to provide facts indicating that he was "treated differently from other inmates on the basis of his religion with regard to the service of food." (Defs. Mot. 24-25.) The Court agrees.

Under the Fourteenth Amendment, "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause is essentially a direction that all persons similarly situated should be treated alike." *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000) (internal quotations marks omitted) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)). To state a violation, "a plaintiff must allege 'that he [or she] was treated differently than others similarly situated as a result of intentional or purposeful discrimination.'" *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 590-91 (S.D.N.Y. 2015) (quoting *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005)).

Here, Plaintiff first alleges that Defendants treated Plaintiff "differently compared to the treatment [of] other religions" at WCJ. (Compl. ¶ 101.) But aside from this stray conclusory statement, Plaintiff fails to offer any allegations that reveal intentional discrimination or disparate effects/treatment. A few paragraphs later, Plaintiff avers that Defendants "treated Jewish and Muslim inmates different from other religions." (*Id.* ¶ 105.) Such a passing reference, however, "fails to describe how the treatment of those groups differ from the treatment provided to Plaintiff." *Corbett*, 2018 WL 919832 at *4. At bottom, without more facts to support his threadbare allegations, Plaintiff has failed to state an equal protection violation. The Court GRANTS Defendants' motion to dismiss those claims, without prejudice and with leave to replead.

### D. RLUIPA Claims

Plaintiff charges Defendant with violations of RLUIPA. (Compl. ¶¶ 88-90.) Whether Plaintiff seeks monetary and declaratory/injunctive relief, his RLUIPA claim must be dismissed.

*First*, RLUIPA "does not authorize claims for monetary damages against state officers in either their official or individual capacities." *Ross v. Aramark Corp.*, No. 18 CV 2246 (VB), 2019 WL 1172383, at *6 (S.D.N.Y. Mar. 13, 2019) (quoting *Holland*, 758 F.3d at 224). Accordingly, Plaintiff's claim for monetary damages under RLUIPA fails. *Second*, "[a]n inmate's transfer from

a prison generally moots claims for declaratory and injunctive relief against officials at that facility." *Keitt v. Hawk*, No. 9:13-cv-850 (GLS/ATB), 2015 WL 1246058, at *11 (N.D.N.Y. Mar. 18, 2015) (citing *Salahuddin*, 467 F.3d at 272). Here, as previously noted, Plaintiff is now an inmate a Fishkill Correctional Facility. Thus, to the extent he seeks injunctive or declaratory relief, Plaintiff's RLUIPA claim is now moot. The Court GRANTS Defendants' motion to dismiss Plaintiff's RLUIPA claim, with prejudice.

### E. RFRA Claims

Plaintiff asserts a claim under RFRA based on Defendants' alleged violation of Plaintiff's religious freedom. (Compl. ¶¶ 91-93.) However, the Supreme Court in *City of Boerne v. Flores*, 521 U.S. 507 (1997), "invalidated RFRA as applied to States and their subdivisions." *Cutter v. Wilkinson*, 544 U.S. 709, 715 (2005) (citing *City of Boerne*, 521 U.S. at 532-36). Defendants' motion to dismiss Plaintiff's RFRA claim is GRANTED, with prejudice.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Plaintiff is granted to leave to file an Amended Complaint as to any claims that have not been dismissed with prejudice. If he chooses to do so, Plaintiff will have until April 9, 2020 to file an Amended Complaint consistent with this Opinion and Order. An Amended Civil Rights Complaint form is attached. Defendants are then directed to answer or otherwise respond by May 25, 2020. Failure to file an Amended Complaint within the time allowed, and without good cause to excuse such failure, will result in dismissal of Plaintiff's complaint with prejudice.

The Clerk of the Court is respectfully directed to terminate the motions at ECF No. 34. The Clerk is also respectfully directed to mail a copy of this Opinion and Order to Plaintiff at the address listed on ECF and to file proof of service on the docket.

Dated:  March 2, 2020
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.


-against-

_____

_____

_____

_____

Write the full name of each defendant. If you cannot fit the
names of all of the defendants in the space provided, please
write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The
names listed above must be identical to those contained in
Section IV.

_____CV_____

(Include case number if one has been
assigned)

**COMPLAINT**
(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

## I.    LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.    PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

_____

First Name                     Middle Initial                Last Name

_____

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

_____

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

_____

Current Place of Detention

_____

Institutional Address

_____

County, City                          State                    Zip Code

## III.    PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

## IV.   DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name        Last Name        Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City        State        Zip Code

Defendant 2:

First Name        Last Name        Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City        State        Zip Code

Defendant 3:

First Name        Last Name        Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City        State        Zip Code

Defendant 4:

First Name        Last Name        Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City        State        Zip Code

## V.    STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

## VII.  PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

_____            _____
Dated                                                                Plaintiff's Signature

_____
First Name                              Middle Initial              Last Name

_____
Prison Address

_____
County, City                                        State                      Zip Code

Date on which I am delivering this complaint to prison authorities for mailing: _____